The United States Court of Appeals for the Federal Circuit is now open and in session. God save the United States and this honorable court. The first two cases for argument which are consolidated are 19-1902 and 20-1250, consolidated for purposes of argument. Both are named Power-Packer North America v. G.W. Lisk. Mr. Margolis, whenever you're ready. May it please the court. The board erred here by failing to adopt the broadest reasonable interpretation of the term flow-regulating valve. The term flow-regulating valve is not ambiguous and its meaning is crystal clear from the intrinsic evidence. A flow-regulating valve is a valve that regulates flow. The board's departure from the plain meaning of this term by using extrinsic evidence was erroneous. The first place to look here is the original argument made by Lisk in its opening brief in the IPR. It originally told the board that the 821 patent claims and specification provide context informing a person of skill in the arts understanding of flow-regulating valve. At the time, it did not say that this was a term of art which required extrinsic evidence to understand. At that time... Let me ask you, Mr. Margolis, this is Judge Proust, where in the intrinsic evidence is there an explicit or clear definition? In terms of the patentee defining it, there's no definition that way, but the term itself is a clearly understandable term. It uses normal English words, flow-regulating and valve. Well, is there anything in that, I'm sorry to interrupt, but is there anything in the specification that disagrees or is inconsistent or contrary to the claim construction provided by the board? Yes, there is, Your Honor. First of all, the specification excluding the claims does not use the term flow-regulating valve. It uses flow-control valve, and in its very last sentence, the patent says, instead of opening and closing a flow-control valve, the proportional control can be arranged to adjust the operating positions of other hydraulic and mechanical devices. Then, in the claims, the term flow-regulating valve is used. In terms of use of the term regulating flow, that is used in the patent. Mr. Margolis, this is Judge Chen. Did your expert acknowledge that those two terms are synonymous, flow-control valve and flow-regulating valve? He did in the context and immediately after saying that a directional valve is a flow-regulating valve and a flow-control valve. So, yes, in his mind, they were synonymous because, in his mind, a directional valve is a flow-regulating valve. Okay. Could you, I mean, I am very interested in the answer to Chief Judge Prost's question. What in the spec tells us that something about the meaning of flow-regulating valve? Well, if you look in the specification, Appendix 163, and for the benefit of the Court, we have two appendices. My cites will be from the 2019-1902-1965 appendix. At column 165-67, it says, a directional valve is preferably a four-way servo valve in the form of a spool valve that regulates flows. Going on to Appendix 164, 335-38, it talks about this valve regulating the flow of working fluid. Additionally, on column 742-45, the directional valve is a four-way directional valve that regulates flow of fluid. Mr. Margolis, you completely lost me because I thought you were going to direct us to passages that were going to explain and define how the inventor contemplated the meaning of flow-regulating valve, and the passages you just quoted are talking about the directional valve. Yes, because those are uses of the term regulate or regulating flow in the specification. When referring to the main valve, it calls it a flow-control valve, and the broadening paragraph at the end of the patent says that the claims can be broader than flow-control valve and then uses flow regulation. So the only time the patent specification uses the term regulating flow, well, the times it uses it refer to both directional valves and to flow-control valves, which we contend is contrary to the narrowing. Mr. Margolis, let me see. I want us to be precise here. There doesn't seem to be any dispute among the experts, among the parties, that when it comes to a directional valve, a directional valve, its primary purpose is to direct flow in one direction versus another direction, but then it could have a secondary purpose, which is to regulate or meter out the flow of fluid going through that valve. And so the fact that there could be some discussion of a directional valve in this patent regulating flow, that's perfectly consistent with everyone's understanding of how a skilled artisan would ordinarily understand that term in this art. But when it comes to flow-regulating valves, I don't see anything here in the specification either with respect to that claim term or the referred-to term of flow-control valve as saying, yes, and when we talk about a flow-control valve, flow-regulating valve, we're talking about a valve that can actually direct and channel the flow of fluid down one passage versus another passage. Is there anything like that in this specification? There's nothing like what you just said. It is that flow-regulating valve or the term regulating flow was always used functionally in the patent. And in describing some aspect of the directional valve, right? In both the directional valve and the flow-control valve. Right. So, but the term... I don't... Do you see my problem? My problem is I'm trying to find out if there's something in this specification that communicates to me that this patent drafter, this inventor, was contemplating flow-regulating valve to be something where there's also going to be some channeling of fluid flow down one passage versus another passage. Well, what we contend is there's nothing contended... There's nothing in the patent saying that it's not. The board's decision was a flow-regulating valve stops being a flow-regulating valve if it has another function, even if that function is a primary purpose. And there's nothing in the specification changing that. Can I ask you... Can I... This is Judge Prost. Can I change the direction a little bit? I mean, under the process we're dealing here, there's nothing, as we all acknowledge, this term is not included, referenced in the spec at all. There's no prosecution history that anyone's talking about. So why was it error for the board judge to say this is a term... I think this is a term of art in the context of this whole patent, which is very dense. And so I'm going to look to the extrinsic evidence. And once he does that, he's got a more deferential standard of review, and he's got a fair amount of evidence that supports his ultimate construction. So where is the error in this circumstance? The error in this circumstance, first of all, there is something in the prosecution history. In the reasons for allowance, the examiner said that, among other things, Martin did... Martin was one of a list of patents that contained a series of elements, including a flow-regulating valve. The error was also that, originally, LISC told the board, the 821 Patent Claims and Specification provide context informing a person of skill in the arts understanding of flow-regulating valve. It was only after the IPR was instituted that they said, oh, it is a term... We changed our minds. It's a term of art, and we need extrinsic evidence. Mr. Margolis, are you making some kind of waiver or forfeiture argument that you're arguing the patentee was barred from arguing that flow-regulating valve is an established term of art, and so it was wrong for the board to find as such? It's more of a credibility argument. I'm not arguing waiver. We did not make that argument. What I'm arguing is... ...is the board's finding that flow-regulating valve is, in fact, an established term of art in this technical field, and it means something that not only regulates flow, but it does so without any directional control capabilities. You would assume that... The starting point is the term flow-regulating valve, which is simple English and used in that say, flow-regulating valve to regulate the flow. What you have here is something that contradicts that because it adds that giant negative implication. You have the... Well, let's just start with a hypothetical. If, hypothetically, this term, flow-regulating valve, which I was not familiar with before this appeal, had a very specific, widely understood, long-established definitional meaning in this particular art, let's just assume that for a moment. If that term did, then wouldn't we, for patent claim construction principles, need to abide by that definition unless there was something in the patent itself and inside the intrinsic evidence that clearly intended a different meaning for the term? I would agree, Your Honor. If we had a dictionary definition or even one piece of literature defining flow-regulating valve in that way, it would fall under the proper use of extrinsic evidence under Phillips. Okay. So then here, the board did find, in its view, enough evidence to clearly establish in its opinion that there was a definitional understanding for this claim term, flow-regulating valve. And so it then understood under ordinary claim construction principles when you presume that the patent drafter is using terms of art as they are understood unless the intrinsic evidence tells us otherwise. And we believe that the evidence, the extrinsic evidence, didn't even give enough extrinsic evidence to change the plain meaning of flow-regulating valve in a patent that uses the verb regulating flow, regulate flow, to apply to direction control valves. Before you go, because I just heard your bell go off, could you just respond to what I saw on the record your own expert say about the meaning of a flow-regulating valve as they don't have any directional control capabilities at all, quote-unquote. And the patent owner's expert here, likewise, in its declaration said that flow-regulating valve is something that operates without providing directional control. I am happy to respond to both those points. First, if you read Dr. Labus, Mr. Labus's, Professor Labus's deposition, including the question and answer immediately before what you're focusing on, and this is Appendix 562, he says, question, so in your opinion, then, all directional valves are flow-regulating valves? Yes. Then he says, in answer, what's the difference between directional valve and a flow-regulating valve? The site you quoted, a flow-regulating valve provides monitoring the amount of fluid. It doesn't have directional control capabilities. But then he goes on to say a directional valve has flow-regulation capabilities and continues to go on to say he views directional valves as flow-regulation valves. The most telling statement from Dr. Craig, LISC's expert, is when faced with what Martin is, which is a servo valve which has both direction and flow control, he did say it is a flow-regulating valve. So when he applied it to both servo valves, which has both direction and flow control, and to Martin itself, he did admit that that's a flow-regulating valve, which contradicts the view that there's that stark dichotomy that the board found. And I add, and then I will, I know I'm already using some of my rebuttal time, I'll add that you would expect to find some piece of literature with a definition of flow-regulating valve or even discussion of flow-regulating valve, and that's simply not in the record. Thank you. I'll reserve the rest of my time for rebuttal. Okay. Thank you very much. Mr. Peterson. Thank you. May it please the court. The board correctly construed the term flow-regulating valve and in the appeals, this court should confirm. In the cross appeals, this court should reverse, proclaims 20 to 22 because the feedback mechanism of Martin connects to the device, not to the double acting actuator, proclaims 12 to 13 and 16 to 18 because Eggers does not teach different amounts of feedback, and proclaims one to five. Mr. Peterson, this is Judge Chen, just so I understand, how does the outcome of this district court litigation? I mean, obviously, if we somehow partially affirmed and partially reversed in such a way that all the claims were rendered unpatentable, that would end that district court litigation, but I'm wondering if there's some other outcome where the litigation is going to move on if certain of these claims survive over others. Is there an answer you have for that? Yes, Your Honor. If this court were to affirm in both the appeal and in the cross appeal, the pending district court litigation would move forward. Would move forward? Yes, Your Honor. Okay. But just about any iteration of what we were to do here, barring that total rendering of the entire patent invalid, would the Iowa district court litigation move forward? Yes, Your Honor. That is essentially correct. Okay. Mr. Peterson, this is Judge Prost. Can I bring you to the claim construction discussion we were having with your friend? Because does it not, is it not sort of unusual under these circumstances? I guess my question is two-part, one, for the decision of the board judge to decide to go to extrinsic evidence and that this was a term of art. Usually, at least in my anecdotal experience, you know, there's loads of engineering dictionaries and texts. And you'd think that if one were going to feel like this is a term of art and not sort of just looking at its absolute plain and ordinary meaning, looking at the words, there'd be some further support other than expert testimony. I guess this is kind of an important issue in one respect because of the different standard of review for expert testimony, it seems like we don't want to open this can farther than it should be opened to allow courts, et cetera, to go to the extrinsic evidence in the first instance. That's part one. And part two, and I apologize for taking so long, is when I look at, when you look at the actual extrinsic evidence that the board used, it seems to me a bit of a stretch because there's plenty of evidence to conclude that any valve with directional control could be a directional valve, but the board's conclusion was based on the two being mutually exclusive. And I didn't see that conclusion buttoned down in the expert testimony. So could you try to respond to both questions? Thank you. Thank you, Your Honor. So let me first discuss briefly the turning to the extrinsic evidence. And I think what my friend argued for was that you look at the words in simple English. And I disagree with that because the fundamental principle of claim construction is that we read the words as they're used to one of skill in the art. And the Supreme Court in Teva v. Sandoz and a number of this court's cases have told us that this is a classic use for extrinsic evidence. Well, are you saying this is a term of art? The board found that this was a term of art, and it was a term that the board found had an ordinary meaning to a person of skill in the art. If it's a term of art in this field, I mean, wouldn't one normally not find, therefore, the meaning of this term of art in some sort of text as opposed to just relying on expert testimony? I think you would, but I think you look, if you look, the board quoted this on appendix pages 21 and going to appendix page 23 as well. The merit reference talked about the functional classification of valves and noted these as different functional types, flow control valves and directional control valves. I'm sorry, you said page 21 of the board opinion? I'm sorry, it's page 24 of the board's opinion. I believe it's appendix, no, I'm sorry, Your Honor. It is appendix page 21 in the 1902 appeal. Okay, got it. And this is the board quoting the merit reference. And merit says three broad functional types can be distinguished. And it lists two of those types as directional control valves and flow control valves. And then if you turn to appendix page 23, you see the hydraulics and pneumatics publication, which again, as the board recognized, contrasts flow control valves and directional control valves. It talks about flow control valves on one hand and what they do and directional control valves on the other hand. Mr. Peterson, just to follow up on Chief Judge Prost's question, these general descriptions of directional control valves and then the reference in the HP2 about flow control valves, they don't really tell me anything about why a flow control valve necessarily lacks any directional control capabilities. I mean, I read all of this carefully, as I'm sure you did, and that seemed to be the missing link in all of this documentary evidence. And that's why I also, like Chief Judge Prost, found it curious that a supposed technical term of art like this, your side, which is very motivated, couldn't drum up any actual documentary evidence that would show us why it's correct to think of flow control valve as necessarily lacking any directional control capabilities. Well, I think what you take from the references is that flow control valves and directional control valves are understood to be different categories. That is, none of these references, none of the extrinsic evidence suggests in any way what my friend is suggesting, which is that there is a category of flow control valves known to those of skill in the art and that directional control valves are just a subset of that. Mr. Peterson, I'm sorry to keep pounding on you, but just to follow up on Judge Chen's point, I mean, the board went a little farther than that, though. They said that the terms are mutually exclusive and that the flow regulating valves must entirely lack directional control. That's a pretty stark, definitive definition, right? It's not just that they may, it's not just that they can, it's that they must, necessarily. And where is your best support for that in the record in terms of, I assume it's the expert testimony? Can you just point us to the best support for that conclusion? Yes, Your Honor, and that is exactly what I was going to point you to, which is Appendix Page 33, and it's the testimony of GITS's expert. What is the difference between a directional valve and a flow regulating valve? A flow regulating valve, Philipses, does not have any directional control capabilities at all. And on substantial evidence review, there's no reason the board couldn't credit that testimony, which the board concluded was consistent with the extrinsic evidence that recognized flow regulating valve and directional control valve as separate categories. Thank you. With the court's permission, I'd like to turn briefly to the cross appeal. Before you do, I just had a quick hypothetical question when it comes to Martin. Obviously, Martin refers to, I believe, a directional valve 16 that the petitioner was pointing to as being the alleged flow regulating valve, right? Yes, Your Honor. And so am I right to understand that the only difference between the Martin reference and these particular claims is that Martin at the tail end discloses a directional valve rather than a flow regulating valve? We believe there are other differences as well, including one that I'm planning on arguing as part of the cross appeal. However, the one relied upon by the board was the difference between the flow regulating valve and the directional control valve. Just hypothetically, why wouldn't it be obvious to substitute a flow regulating valve in Martin for the directional valve that it uses at the end? Can you think of a reason? Because I was looking at Martin, and I can't think of any earthly reason why it wouldn't be obvious to just slap in and substitute a flow regulating valve for its directional valve. Yes, Your Honor. Actually, in the context of Martin, and the board touches on this just slightly in appendix page 44, the purpose of the main directional control valve 16 in Martin is to operate a double acting cylinder 18. And that's a double acting actuator. And as the patent makes clear, you need to have a directional control valve to operate a double acting actuator. And of course, the instituted ground isn't obviousness, it's anticipation. And so questions about whether it would have been obvious to substitute this in Martin were not before the board. Let me turn briefly to the cross appeal. And let me actually start with Martin. The easiest thing to do would be to look at the picture. It's on page 48 of our opening brief in the 1902 appeal. And you'll see a zoomed in picture colored in from Martin. So the claims 20 to 22... I'm sorry, can you give me that page number again? I'm very sorry. I'm sorry, it's page 48 of our primary brief in the 1902 appeal. Claims 20 to 22 require a double acting actuator. Everyone agrees that Martin has a double acting actuator, and that's Martin's double acting cylinder is labeled 46 in the picture. Martin tells us exactly what is inside that double acting cylinder. This is a quote from Martin. Piston 45 and bore 44 define a double acting cylinder 46, including two chambers 47 and 48. Notably, the previous sentence of Martin mentions spool 20, but it does not say that spool 20 defines the double acting cylinder. So claim 20 requires a connection between the double acting actuator and the device. If you look at the petition, it's on page 112 of the 1902 appendix. The petition says, well, piston 45 is attached to spool 20 of control valve 16. So everything makes perfect sense so far. Piston 45 is the double acting actuator or part of the double acting actuator. Spool 20 is the device. But there's a problem for this, which is if you look at Martin, you see the spring labeled 75. It doesn't connect to the double acting actuator 46. It doesn't connect to piston 45, to the bore 44, or anything else that Martin tells us is part of that double acting cylinder. Instead, Martin connects spring 75 to spool 20, which GITS has previously told us is part of the device. So GITS's solution to this problem in the petition and before the board was to take spool 20 and just color half of it red and call it part of the double acting cylinder. There are three problems with this issue. First, Martin tells you what defines its double acting cylinder. It says it is defined by piston 45 and bore 44. There is no mention in Martin of spool 20 being part of its double acting cylinder. And if you ask my friend just one question about this cross appeal, I would ask you to ask him, please point us to something in Martin that says spool 20 or any piece of this is part of Martin's double acting cylinder. Second, nothing supports dividing the spool in half. There's no structural difference between these two pieces of spool 20. There's no material difference. They don't work differently. This is really just the petitioner working backwards and saying, well, we need the spring to connect to the double acting actuator. It touches the spool. Therefore, we'll call that part of the spool part of the double acting actuator. Mr. Peterson, I had trouble with this argument from the briefing. It's hard for me to buy it as it's clear that different regions of one structure are being mapped to each limitation, not one structure doing double duty as you suggest. I mean, how is this different? Let's say we have a claim to a hammer having a head, a claw, and a handle. If we found a prior art hammer that had one single piece of metal, it seems controversial to say that all those limitations could be met by one piece of metal and that wouldn't be improper. So I don't understand how this is any different than that. Your Honor, we don't disagree with that principle in the abstract as it relates to the hammer. The problem here is that there's no principled reason for saying this part of the spool is part of the double acting actuator and this part of the spool is the device. It's not as though you have a separate hammer and a claw. You simply have one undifferentiated piece of metal that solely in order to meet the requirements of the claims is being divided in half by the patentee. And if you look at the board, the board dealt with this in essentially a single sentence. Mr. Peterson? This is Judge Chen. When I look at your respect of your 821 patent at column 4, lines 23-24, it talks about a shank 70 connected to the piston head 62. And when you look at the figure of that piston with shank 70 and head 62, it's a unitary structure and yet the patent itself describes one designated portion of that integral structure to be connected to another portion of that integral structure. So, I mean, doesn't the patent itself suggest that the term connected to could be connecting one zone of an integral structure to another zone of an integral structure? Your Honor, I certainly think that is possible. But the question is here is whether there is any support, evidentiary support in the record, I would say for dividing the spool in half. And what I was going to say is if you look at the board's analysis of this, which you find on appendix page 47, the board says although Martin does not expressly include spool 20 as part of its double-acting cylinder, petitioner recognizes that at least part of spool 20 is required to enable the movement of piston 45 and 444. The board's support for that is not expert testimony. The board's support for that is attorney argument from the hearing. And there's no question of whether that is consistent with the connection argument. With the court's permission, I know I'm into my rebuttal time. I'd like to turn just very briefly to Eggers with the hopes of readdressing it on rebuttal. Sure. And the easiest here would be looking at the figure from Eggers. You can find this on page 177 of the appendix in the 1250 appeal. The key to the 821 patent is maintaining its directional control valve in a neutral opinion, neutral position, by balancing a strong force from the electric actuator on one side against a strong force from the double-acting actuator and a feedback mechanism on the other side. The harder the electrical actuator pushes on one side, the harder the double-acting actuator pushes on the others. Strength is balanced against strength. Eggers also maintains its directional control valve 9 in a neutral position, but it does so using an exactly opposite mechanism. If you look, spring 13, the top of Eggers is fixed. Whenever directional control valve 9 is in a neutral position, there is exactly the same force pulling on it in spring 13. Eggers doesn't balance a strong force against a strong force. It mechanically reduces the force being provided by the electric actuator. As a result of that different mechanism, Eggers doesn't have feedback between the double-acting actuator and the directional valve that overcomes the force imparted to the directional valve. Eggers doesn't have different amounts of feedback between the double-acting actuator and the directional valve at the neutral position. No matter where double-acting actuator 5 is, there is exactly the same force, exactly the same feedback on directional control valve 9. Mr. Peterson, I don't want to take too much of your time, but it seems to me, I mean, this is a complicated, difficult question that's before us, but why didn't you ask for claim construction about what feedback or amount of feedback means? It seems like it would have gone a long way to helping us resolve this. I think that is correct, Your Honor. It would have been helpful to have had a claim construction on that, but the key from our perspective is that whatever feedback means, there are not different amounts of it, depending on the different position of the double-acting actuator, because of how Eggers works with force. And then finally, with proportionality. I guess claim construction would have helped me, because I didn't see anywhere in your briefing where you actually walk us through an explanation of what this claim limitation even means, moving a double actuator through a range of positions corresponding to different amounts of feedback between the double-acting actuator and the directional valve at the neutral position of the directional valve. I mean, that's a lot to try to take in, and I confess I don't really understand what your conception of what this means is, and then beyond just simply attacking Eggers, saying Eggers, whatever these limitations mean, Eggers doesn't have it. Your Honor, may I walk you through that? I think it would be helpful to look at figure three of our principal appeal in the 1250. I'm sorry, figure three, yes, of our principal brief in the 1250 appeal. And I'm sorry, it's on page seven of our main brief in the 1250 appeal. Your Honor? Yeah, okay. We're on it. Thank you, I'm sorry, I heard beeping. So this is a color-coded version of the 821 patent in figure three. If you look, the gold color is the flow of engine oil through the patent. The piece colored orange is the directional valve. And this is what's truly clever about the patent, is it maintains that directional valve in a neutral position while it is operating. So in that neutral position, there is no flow going to either side of the double-acting actuator. That's what's colored blue. Now, what would happen, if you wanted to move the double-acting actuator, is the electric actuator, that's number 126, to the right of that directional valve, would push harder. And it continues to push, and so it pushes that directional control valve to the left. When it pushes that directional control valve to the left, fluid is directed to the left side of the double-acting actuator. That's the blue piece. When fluid is directed to that left side of the double-acting actuator, it begins to move to the right, compressing the compression spring that is in between the double-acting actuator and the directional control valve. As it pushes to the right, that spring compresses, which exerts force on the directional control valve, which returns that directional control valve to the neutral position. So the harder the electrical actuator pushes from the right and starts to push that directional control valve to the left, the harder the double-acting actuator has to push in the opposite direction to maintain that directional control valve in a neutral position. Similarly, if you release the force on the electric actuator 126, what that causes is for the directional control valve to shift to the right. When it shifts to the right, it directs fluid to the right side of the double-acting actuator. The directional control valve then begins to move to the left, releasing pressure on the spring, so that the directional control valve then returns to the neutral position in the middle. So you have this, essentially, the harder the electrical actuator pushes on that directional control valve from one side, the harder the double-acting actuator pushes on the other. So you have feedback from, between the double-acting actuator and the directional valve that overcomes the force imparted to the directional valve by the electrical actuator, and that force, both from the electrical actuator and in between the directional control valve and the double-acting actuator, is proportional to the control signal that's operating on the electrical actuator, which is a solar one. Mr. Peterson, we are going to have to sort of bring this to a close. Do you have anything more? I don't remember right now. I don't remember what Judge Chen's question was. So can you finish responding to his question? I believe the question was how the 821 patent operates with the phrase about the feedback between the double-acting actuator and the directional valve. I withdrew the question. I apologize that I even asked it. Thank you. I'm sorry. One final point on this. The board found, if you look at appendix page 15 to 16 in the 1250 appeal, that the force acting on the directional control valve has to be proportional to the control signal. That's how the 821 patent works. That's not how Eggers works. As best I can tell on this briefing record, everyone agrees the board got that wrong. If you look at page 44 of my friend's brief in the 1250 appeal, he doesn't say the board correctly held that the force was proportional in Eggers. Instead, what he said is, no, the force doesn't have to be proportional.  That's not a defense of the board's reasoning. Thank you. Thank you especially for the additional time. Okay. We'll restore some time if Mr. Margolis reaches the cross-appeal questions. Now, Mr. Margolis, you've got some time left. Can I just ask you one question on the main appeal for a quick response? Sorry to take your time. Your friend got sort of the strongest evidence he has in the testimony on appendix 33, and that was your expert, right? Mr. Labus? Mr. Margolis, can you hear me? Yes. Sorry, Your Honor. Did you hear my question? I did. And my response to that is, while Mr. Labus did say that, and while that is their strongest evidence, Mr. Labus immediately before that colloquy, and when I say immediately before, the question before, said, in his view, all directional valves are flow-regulating valves. So this, at worst, would make this a misstatement by Mr. Labus because he immediately thereafter added that directional valves are flow-regulating valves. So standing alone, he did make this comment. This is Judge Chen. Yes. He very clearly said flow-regulating valves do not have any directional control capabilities at all. Now, he may have also said the directional control valves have flow-regulation abilities, but that doesn't necessarily mean that the converse is true, that flow-regulating valves also have directional control capabilities. That seems to be the consistent distinction, I see, that both the experts are making. Directional valves have directional control capabilities and secondarily can have flow-regulation abilities, but when it comes to flow-regulating valves, they regulate flow, but they do not have any directional control capabilities at all, and that's why you can classify one thing, a flow-regulating valve, and classify another thing as a directional control valve rather than them both having the same identical functions. Otherwise, you wouldn't be able to tell one from the other. However, Your Honor, what Mr. Labus says on Appendix 562, question, so in your opinion, then, all directional valves are flow-regulating valves? Yes. So when he is directly asked the question on how do you characterize directional valves or valves with directional capabilities, he says they are flow-regulating valves, which is why his statement is a misstatement out of the context. It's a misstatement by him, and I think we point that out through the language right here because he says... Did he ever try to clean it up at all? I know your position is he goofed, he made a boo-boo, but is there any place where this got cleaned up? There is not a place where it got cleaned up. I mean, it was... He called direction valves, flow-regulating valves, immediately thereafter, but is there a question-answer where it's a clean-up? No, there is not. Okay, how about feedback arm and the feedback limitation? Pretend, hypothetically, that I don't understand the Board's reasoning. Can you explain to me, can you walk me through this limitation and why Eggers discloses moving the double-acting actuator through a range of positions corresponding to different amounts of feedback between the double-acting actuator and the directional valve at the neutral position of the directional valve? What I can point out is that, in the record, what Eggers has is a collection of rods, pistons, and a feedback arm that constantly move the piston back to the starting position so that it's adjusted so that new pressure ratios in the working cylinder reverse the original actuating movement. And what, in an uncontested way, our experts stated and cited by the Board on Appendix 61, Eggers discloses providing feedback between piston 5 and control piston 9 that overcomes the force imparted to control pistons and restores the control pistons to a neutral position at which differential flows of compressed air to the first and second surfaces are blocked. That's a different claim limitation. My question is about the limitation after that. Can you please, I'm looking at a picture of the Eggers figure, the Eggers diagram right now, and now I've got the claim limitation that I'm very concerned about regarding different amounts of feedback, also right next to the Eggers diagram. Can you walk me through Eggers, the diagram, and show me why the Board correctly found that this particular limitation about different amounts of feedback is disclosed in this diagram? Yes. As the Board said, feedback is not the same as force. So what the Board found is that when feedback means the return to the input of a part to the output of the machine, so that that is exactly what is happening in Eggers, that when it is moving and the pulses are stopping, it is put back into, I don't want to say the start position, but the position where it will move when the pulses start again. I'm sorry, I'm not seeing how this lines up with the claim limitation at all. We know from the prior limitation that when you provide feedback, whatever that word means, feedback, it overcomes the force imparted to the directional valve and restores the directional valve to a neutral position. We know that. Now I'm looking for something called different amounts of feedback in the Eggers diagram right now that apparently corresponds to moving the double-acting actuator through a range of positions. That's, you know, you get this different amount of feedback when the directional valve is sent back to its neutral position. So can you walk us through that? I'm actually not sure that I can. I'm trying to follow it on the diagram right now, and I think what is the issue is its feedback, which moves it back, depends on the position that it is left in. And what I can do is just say that, as was said in the record, as our expert said, each of these positions of the feedback arm provides a different amount of feedback between the piston 5, the double-acting actuator, and the control pistons, regardless of the force applied by the spring, so that by changing its positions regardless of the force of the spring, that's the differing amount of feedback. So let me get this straight. It's the relative position, the relative height of feedback arm 4? That's what the different amounts of feedback is? It's the combination of the piston, the rod, and the arm, which all together move it back to the proper position. So what is the different amounts of feedback in Eggers? What is it? It's not necessarily the force. It is the collection of the parts together putting it back in the same place. Collection of parts putting it back in the same place. I don't see. You've got to help me. Please help me. That was not precise enough. Okay. Give me one second here. Going back to our expert report, in the Eggers device, negative input signals cause the motor to unwind the cable pull. This triggers a control process for compressed air, which process is opposite of that described above and therefore causes the working piston to drop and the valve to close. There's a neutral position shown in Figure 1 of Eggers where the compressed air and the atmosphere is blocked through lines 7 and 8. And then what our expert says is, a person of ordinary skill in the art would have understood that restoring control pistons 9 to a neutral position would block differential flows of compressed air through 7 and 8 to the first and second surfaces of working piston 5 and prevent upward or downward movement. Nobody is computing any of that understanding of Eggers. That's straightforward and easy to understand. Right. And then what he goes on to say, at each corresponding distance unit, the arm 4 applies feedback between working piston 5 and control pistons 9, which a person of ordinary skill in the art would have recognized as functioning to overcome the force imparted to control pistons 9 to reverse the actuating movement and return to neutral. And does it apply different amounts of feedback? Finally, he says, thus, as piston 5 is moved through a range of positions, arm 4 applies different amounts of feedback. And the expert cites Eggers at 4, 4 to 6, and 5, 20, 6 to 1. A person of ordinary skill in the art thus would have understood that Eggers discloses moving working piston through a range of positions corresponding to different amounts of the feedback between working piston and control pistons at the neutral position. Okay. We're back where I started, which is all I'm getting out of that is that the relative height and position of the feedback arm is somehow... Or somehow correlates to different amounts of feedback, but I don't... Just your expert asserting that it is so doesn't explain to me why that is so. Well, there's nothing contradicting that in the record. And what he says is a person of ordinary skill in the art would recognize that the feedback arm is functioning to overcome the force imparted. So as the piston goes through different positions, the arm applies different amounts of feedback. How? I cannot tell you. Okay. Okay, time has expired. Mr. Peterson, a few more... I think we're restoring rebuttal time, so we'll restore three minutes of rebuttal unless there are questions that need to be answered. Thank you, Chief Judge Prost. I know I went far beyond my time already, so unless the court has questions, I will happily return my rebuttal time. Hearing none. Thank you. We thank both sides, and the cases are submitted. Thank you, Your Honor.